NEILSEN *v.* STATE.*

(Division B. Feb. 6, 1928.)

[115 So. 429. No. 26702.]

1. INDICTMENT AND INFORMATION. *Grand jury's adjournment from one day to another of term held not to render indictment returned on assembly within period of adjournment invalid; indictment concurred in by twelve or more grand jurors at reassembly during period of adjournment during same term of court held good on motion to quash.*

Where a grand jury is regularly impaneled at a term of court and enters upon its duties, the fact that it may adjourn from one day of the term to another does not prevent it from assembling within the period during which the adjournment was taken and returning a bill of indictment into the court, where the court has not discharged the grand jury; and if it files a bill of indictment during such period, when twelve or more grand jurors are present and concur therein, and such indictment is received by the court under such circumstances, a motion to quash the indictment should be overruled.

2. INDICTMENT AND INFORMATION. *Indictment for uttering forged instrument charging possession without alleging purpose of uttering, and charging that, having possession, he uttered it, held not duplicitous.*

An indictment for uttering a forged instrument in which the defendant is charged with having possession of a forged instrument, knowing it to be forged, but which fails to allege that he had possession of the same for the purpose of uttering it; and also in which it is charged that, having such possession and knowing it to be a forged instrument, he uttered it as a valid instrument, does not make the indictment defective for duplicity.

3. FORGERY. *Contract for installing heating system, assigned to bank to secure loan, held susceptible of forgery.*

Where a contractor procures a loan from a bank and assigns to the bank a contract, purported to be a valid contract, to secure the loan, such contract being one for the installation of a heating system of a specified kind, for a specified consideration, enforceable by the parties to it, such contract is susceptible to forgery, and the party forging such contract and assigning it may be convicted of that crime.

4. INDICTMENT AND INFORMATION. *Defendant not objecting to forged contract, alleged in haec verba in indictment, as evidence on ground of variance or assigning such objection before verdict, cannot object thereafter if indictment was amendable.*

Where a contract alleged to have been forged is set out *in haec verba* in the indictment, and on the trial of the case when the contract is offered to prove the charge the defendant fails to object on the ground of variance when such instrument is offered, and where he fails to assign such objection as a ground for excluding the evidence before the verdict, he cannot afterward object to it, provided the indictment was amendable.

5. CRIMINAL LAW. *Failure to include expression "from evidence" in instruction authorizing conviction for uttering forged instrument held not reversible error, in view of other instructions.*

Although it is error for the instructions for the state to merely tell the jury, "If you believe beyond a reasonable doubt that the defendant willfully, unlawfully, and feloniously uttered and passed to the Mechanics' Bank as true a forged instrument with intent to defraud, etc," without using the words, "from the evidence," yet, where there is no dispute about the instrument, and the instructions for the defendant give the jury full information as to what is necessary to make out the offense, such instructions do not constitute reversible error.

6. CRIMINAL LAW. *Instructions requiring jury to believe guilt beyond reasonable doubt from evidence held to cure error in instructions not containing such requirement; in criminal case all instructions are to be considered together; if instructions considered together state elements of offense and amount of proof required, conviction will not be reversed.*

Where some of the state's instructions to the jury fail to embody the hypothesis that jury must believe the offense charged beyond a reasonable doubt from the evidence in the case, but where the other instructions give this information, it cures the error, as all instructions are considered together as one charge; and if, so considered, they give the jury the elements of the offense and the amount of proof required, a conviction will not be reversed.

7. FORGERY. *Evidence held to warrant refusal of peremptory instruction based on theory that evidence of defendant's good faith in obtaining credit on forged contract was undisputed.*

Where, on trial for forgery, the defendant testifies in his own behalf that he did not sign the name to the forged instrument, and that he found the instrument in his files and supposed it to be a lawful contract procured by an employee, and that he did not know it was a forged instrument; and where the proof for the state shows that the defendant, at the time of uttering the instrument, requested the bank not to notify the party whose name was signed to it of such instrument, and subsequent to the assignment fled to a foreign state, using an assumed name, and was arrested and brought back for trial, the defendant is not entitled to a peremptory instruction on the theory that his evidence of good faith is undisputed, as the jury are warranted by the above facts in believing his statement to be false.

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 1050, n. 84; p. 1053, n. 93; Forgery, 26CJ, p. 914, n. 80; p. 977, n. 30; Indictments and Informations, 31CJ, p. 576, n. 72; p. 579, n. 24; p. 773, n. 47; p. 879, n. 88.

APPEAL from circuit court of Pike county.

HON. E. J. SIMMONS, Judge.

Pete Neilsen was convicted of uttering a forged instrument, and he appeals. Affirmed.

*M. S. McNeil* and *E. G. Williams,* for appellant.

The demurrer to the indictment in this case should have been sustained. The indictment is misleading in

its phraseology; charges two crimes in one count, and fails to inform the defendant of the nature of the accusation against him. See *Hill* v. *State,* 72 Miss. 527; *Burges* v. *State,* 81 Miss. 484. The indictment charges the appellant with having in his possession a forged, altered and counterfeited instrument, in writing, under section 966, Hemingway's Code, and charges the appellant with uttering a forged instrument, under section 968 of same. It would be just as admissible to charge in an indictment "that he did then and there wilfully, unlawfully and feloniously rape, ravish and carnally know a female, against her will, and did then and there wilfully, unlawfully and feloniously and of his malice aforethought kill and murder the same female person."

There is another serious objection to the indictment, when tested in the light of authorities, and that is, the instrument upon its face is not a subject of forgery. See *Moore* v. *State,* 107 Miss. 181. It is possible that the instrument in question, under a proper indictment, could have been made the subject of forgery, but forgery cannot be predicated upon this instrument alone, which has no efficacy upon its face to injure. It is not sufficient under this indictment to allege that the appellant had in his possession the instrument, knowing that it was forged, and that he uttered the same, with the intent to cheat and defraud. This would not charge a crime. But the pleader should have gone further and shown by proper averments all the extrinsic facts, making the instrument capable of affecting the rights of another. In other words, uttering and declaring the instrument in question to be true, with the intent to cheat and defraud, could not in any possible way effect the rights of another, unless some further steps were taken, and the further steps taken in this case, as shown by the evidence, were the execution of notes to the bank and the assignment of the paper in question as collateral security, all of which was left out of the indictment. Upon this feature of the

case we respectfully refer the court to 12 R. C. L., pages 149 and 150, and the authorities cited.

Instructions for the state are erroneous. Instruction number 2 is erroneous, for this reason: Instruction number 1 identified the instrument, as it should do, purported to have been uttered as the writing set out in the indictment. Instruction number 3 identified the instrument introduced in evidence as the contract between Pete Neilsen & Company and T. Singletary, but instruction number 2 was as follows: ''The court instructs the jury for the state that if you believe beyond a reasonable doubt that Pete Neilsen wilfully, unlawfully and feloniously uttered and passed to the Mechanics' State Bank as true a forged instrument, with the intent to defraud, etc.,'' leaving the inference that there were possibly other forged instruments than the one described in the indictment. There were other instruments offered in evidence in this case. There were three notes, which the evidence showed the defendant carried away from the bank to have his two partners sign. There was no evidence that his partners signed them, but there was evidence that their signatures were on the notes when he took them back to the bank, and this instruction, construed together with the other instruction, told the jury that if they believed from the evidence that the defendant feloniously uttered and passed as true any other forged instrument than that charged in the indictment he was guilty. This, however, is not the most serious criticism of this instruction. We insist the granting of the second and third instructions is reversible error, for another reason: The two instructions read: ''The court instructs the jury for the state that if you believe beyond a reasonable doubt, etc.,'' leaving out the essential and indispensable provision necessary to the safety of every defendant charged with crime *to believe from the evidence beyond a reasonable doubt.* Instruction number two told the jury that if they believed beyond a reasonable doubt that the defendant uttered a forged instrument—*not from the evidence—*

not the instrument alleged in the indictment—a forged instrument—any other instrument. The jury under these two instructions were left to speculate and indulge in suspicions against the defendant. The testimony shows that this case had been discussed throughout the county; that there had been several newspaper articles with reference to the alleged offense, which were read extensively by men all over the county. The jury were not confined to the evidence they heard in the trial of the case, but were warranted in basing their verdict upon belief, regardless of the source from which it came. They were warranted in believing what they heard before being accepted upon the jury. The criticism we offer to these instructions was held to be reversible error in *Gordon* v. *State,* 95 Miss. 543. See, also, *Schappert* v. *Ringler,* 45 N. Y. Super. Ct. 345; *McGonigal* v. *Pittsburgh Rys. Co.,* 89 Atl. 805, 243 Pa. 47.; *State* v. *Cooler,* 98 S. E. 845, 112 S. C. 95; *Lundon* v. *City of Chicago,* 83 Ill. App. 208; *State* v. *Hamilton,* 157 Pac. 796, 80 Or. 562; *Peterson* v. *Bogner,* 117 Pac. 805, 59 Or. 555; *International Harvester Co. of America* v. *Campbell,* 96 S. W. 93, 43 Tex. Civ. App. 421; *Lavenburg* v. *Harper,* 27 Miss. 299. See, also, 129 Miss. 226, 91 So. 897; *Hemming* v. *Rawlings,* 144 Miss. 648.

The court should have sustained the peremptory instruction requested by the defendant in the court below at the conclusion of all of the testimony in this case. While it is exceedingly doubtful whether or not the proof was sufficient to make out a *prima-facie* case against the defendant on the state's testimony, the question of his guilt under the indictment was settled by his testimony, in view of the recent decisions of this court. Viewing the testimony offered by the state in connection with the testimony of the defendant this case comes within the rule laid down by Judge ANDERSON in *Gaddis* v. *State,* 110 So. 691.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

Counsel first insist that the indictment in this case was bad for duplicity in that it charged in the same count two separate and distinct felonies, the first of which was the possessing of a forged, altered, or counterfeit instrument of writing, and second the uttering and publishing of the said forged instrument of writing. It will be observed from counsel's brief that they argued that the demurrer should be sustained because the indictment was duplicitous as stated above, but at the outset he is confronted with an insurmountable obstacle. In the case at bar, the demurrer did not set forth each one of its grounds, for the fact that the indictment was duplicitous, and, by its failure to do this, the trial judge was not given the benefit of this objection, which is urged for the first time. Under the well-settled rules of law, counsel cannot at this stage of the game raise this objection to the indictment. See *State* v. *Butterfield Lumber Company,* 103 Miss. 286, 60 So. 322.

Certainly it could not be said that the mere possessing of a forged instrument is a crime. The rule is well settled in this state that where an indictment in apt language charges the commission of a crime setting forth the necessary allegations to constitute such crime, and in the same count of the indictment also attempts to charge another crime, but charges it insufficiently, then the indictment is not bad for duplicity. *Donaldson* v. *The State,* 102 Miss. 346, 59 So. 99; *State* v. *Howell,* 106 Miss. 461, 64 So. 159; *Ross* v. *The State,* 135 Miss. 862, 101 So. 289. For other cases involving similar circumstances where the court has held the indictment not to be duplicitous, see the following: *Greene* v. *The State,* 23 Miss. 509; *Sarah* v. *The State,* 28 Miss. 267; *Smith* v. *The State,* 57 Miss. 822; *Clue* v. *The State,* 78 Miss. 661, 29 So. 516; *Jimerson* v. *The State,* 93 Miss. 685, 46 So. 948; *State* v. *Clark,* 52 So. 691; *State* v. *Stringer,* 105 Miss. 851, 63 So. 270.

Counsel next insist that the indictment in this case is void because the writing alleged to have been forged was

not one which, even though genuine, might injure another. The argument of counsel is that inasmuch as the writing by which the contract was assigned does not appear in the indictment, the contract itself is not one of apparent legal efficacy. In support of this contention they cite the case of *Moore* v. *The State,* 107 Miss. 181. A casual reading of the opinion of the court in that case will show that it is not authority for the position of appellant. The instrument there alleged to have been forged could, under no circumstances, have injured anyone. There was no apparent legal efficacy, because, even if it had been genuine, it would have conferred on no one whatsoever the power to pay on it. In the case at bar, it cannot be denied that the contract is one which, if genuine, imposed duties and obligations on the parties contracting and therefore could injure someone. Or, in other words, it clearly is of apparent legal efficacy. 26 C. J., sec. 90, p. 942; *McGuire* v. *State,* 91 Miss. 151, 44 So. 802; *France* v. *State,* 83 Miss. 281.

Argued orally by *M. S. McNeil* and *E. G. Williams,* for appellant, and *Rufus Creekmore,* Assistant Attorney-General, for appellee.

ETHRIDGE, P. J., delivered the opinion of the court.

The appellant, Neilsen, was indicted for uttering a forged instrument, and was tried and convicted thereon and sentenced to the penitentiary.

The appellant first made a motion to quash the indictment, setting up in the motion that the indictment purported to have been found and presented on March 12, 1927, when in truth and in fact the grand jury of the circuit court of Pike county had taken recess from Wednesday, March 9th, until Tuesday, March 15th, and if this indictment was presented on March 12th, in open court, as required by law, it was presented during a recess of the grand jury, as stated, and was void and of no

effect; that if the grand jury, after such adjournment, did reconvene, it was without authority of law, not having been reassembled by an order of the court appearing on the minutes. The motion to quash was overruled and is assigned as error.

The minutes of the court show that the grand jury returned a bill of indictment in court on the 12th day of March, 1927, accompanied by twelve or more of their members; that it was recorded and the defendant afterwards taken in custody.

We think the motion to quash the indictment is without merit. Whether or not the grand jury adjourned was immaterial, as it had not been discharged by law, and could reassemble of its own accord, or on the call of the foreman; and if it did reassemble and present the indictment through twelve of its members to the court, and such indictment was received by the court, that is sufficient.

There was application for change of venue, which was denied, but from the record we think there was no error in the court having overruled this motion for such change.

The defendant then demurred to the indictment, which demurrer was overruled. This is assigned as error.

It appears from the record that the appellant, Neilsen, secured a loan from the Mechanics' State Bank for P. Neilsen & Co., a partnership composed of P. Neilsen, A. Neam, and S. C. Harvey, for three thousand dollars; that it was explained to Neilsen that he would be required to put up some collateral before the bank would make the loan; that Neilsen then presented to the bank officer a contract signed by the Illinois Central Railroad Company for some construction work in connection with one of its depots, and also a contract with one T. Singletary. This contract with T. Singletary is the instrument in the indictment alleged to have been forged, and it is set out in the indictment *in extenso*. It called for the payment of three thousand eight hundred dollars to P. Neilsen

& Co. for equipping a hotel with a heating system; it showed that the contract was signed on behalf of P. Neilsen & Co. by P. Neilsen and purported to be signed by Singletary himself in his own behalf. The bank accepted these collateral contracts and made the loan, which was represented by three promissory notes of one thousand dollars, due thirty, sixty, and ninety days, respectively. Before the notes were repaid, the appellant left the county, whereupon the bank made inquiry about the Singletary contract and was informed by Singletary that he had not executed such contract as that assigned to the bank. The bank thereupon instituted search and caused Neilsen to be arrested, locating him in the state of Texas under an assumed name, set out one of the *aliases* in the indictment. He was returned to Mississippi for trial.

On the trial, the bank officer testified that Neilsen presented the contracts, mentioned above, stating the contract with Singletary was the original contract, and requested the bank not to notify Singletary of the assignment of the contract, as it might injure his credit, and testified that they were assigned to the bank.

As to the statement made by Neilsen, Singletary testified that he did not have a written contract with P. Neilsen & Co., and that he had never signed any such contract; that the signature to the contract introduced was not his, and that he had never authorized any one else to sign the same in his behalf, but that he had a verbal contract with Neilsen & Co. to install a heating system at and for the sum of three thousand one hundred dollars.

The appellant, Neilsen, testified that he had a contract with Singletary, but that the contract was not reduced to writing, or presented to Singletary for his signature by him; that he signed the contract himself in behalf of this company and turned it over to the foreman to get the signature of Singletary; that the contract was in his files at the time he took it to the bank; that he thought

Singletary's signature was genuine; that he did not know Singletary's signature, but assumed the contract found in his files was all right; and that it was customary for these contracts to be closed by the foreman of the particular job to which the contract pertained.

At the conclusion of the state's evidence, the appellant moved to exclude the evidence and to direct the jury to find a verdict for him, assigning the following reasons:

"First. The alleged contract, as set out in the indictment, is purely executory in its nature and had no legal efficacy at the time it is alleged the same was uttered and passed at the Mechanics' State Bank.

"Second. The proof is at variance with the allegations of the indictment in this: The indictment alleges and charges that the instrument which it is alleged was uttered and passed to the Mechanics' State Bank, and which speaks for itself, was assigned to the Mechanics' Bank, but not the proceeds of same, but it was merely an assignment of an executory contract.

"Third. The proof of R. D. Brock, cashier of the bank, negatives any idea of any criminal intent to cheat and defraud the bank, for that, according to his evidence, if the alleged contract had as a matter of fact, which it did not, any legal efficacy on October 1, 1925, at the time it is alleged same was uttered and passed, that the bank waived any claim it may have had thereto, and is estopped for the reason that the witness states specifically and positively that there was a distinctly understood contract, and it was agreed at the time of uttering and passing of said instrument that the bank was not to notify either the Illinois Central Railroad or T. Singletary, but that any money that might be due on either of the purported instruments assigned was to be collected by P. Neilsen individually."

"Fifth. There is no proof in this case that Neilsen forged the name of T. Singletary, nor is there any proof that he knew the name of T. Singletary had been forged to the purported contract.

"Sixth. The proof shows that Singletary had a contract with Neilsen for the installation of a certain heating system, and the proof shows that such a contract was in existence and was performed by the defendant herein, and the assignment which has been introduced in evidence, purporting to assign the rights of the defendant in said contract, does not purport to assign any right in a written contract, and said assignment of a verbal contract would have been just as effective as an assignment of a written contract, had the bank, exercising due diligence, notified T. Singletary, or the acceptor of said purported contract.

"Seventh. The proof shows that the bank was negligent in not notifying Singletary, in that the proof shows that the work had been completed long before any notice was ever served or given to Singletary, one of the interested parties."

We think the demurrer to the indictment was properly overruled, and that the indictment does not charge two felonies in one count. The first part of the indictment charging possession of a forged instrument does not undertake to allege that the defendant had possession of the forged instrument for the purpose of fraudulently uttering it or passing it, but merely charges the possession, and that, knowing it was a forged instrument he uttered it to the bank as a valid instrument, and therefore a single felony is charged, to-wit, the uttering of the forged instrument.

As stated above, the indictment set out the alleged forged contract, *verbatim*. When the state was making out its proof, it introduced a contract slightly different from the one declared on in the indictment in that it omitted the word "Dress" before the words "heating system," and also contained the words "vent line to expansion tank to be taken from the highest point of main in attic. Overflow and vent line to be properly insulated to prevent freezing." When this contract was offered in evidence, it was not objected to on the ground of these

variances, nor was there any specification of such objection in the motion to exclude the evidence. That being true, the point was not presented to the court below in such a way as to enable it to rule upon the question, and cannot be raised for the first time here, as it may be that the indictment could have been amended to conform to the true instrument; and appellant will not be permitted to raise a point here, not jurisdictional in its nature, that was not raised in the court below. It is well settled, of course, that two felonies cannot be charged in the same count of an indictment. *Hill* v. *State,* 72 Miss. 527, 17 So. 375; *Burges* v. *State,* 81 Miss. 484, 33 So. 499. But the indictment in the present case does not fall within the requirements of these authorities, because two felonies were not charged, as above stated. The case here is analogous to the case of *Ross* v. *State,* 135 Miss. 862, 101 So. 289. In that case it was insisted that there were two crimes charged in the same count, one a common-law crime, and the other statutory, but the court held that the indictment only charged one and therefore was not defective or duplicitous within the meaning of the law upon that subject. In the case at bar, it seems to us that it cannot be denied that the instrument alleged to be forged imposes duties and obligations upon the parties contracting, and a breach of the contract, if it is a valid one, would be injurious to the party not breaching it. It is therefore clear that the contract, not being one to come into effect upon the happening of something undisclosed or not arrived at, was a present, subsisting obligation, if genuine, and conferred rights and imposed duties upon each of the parties contracting. It was a type of contract which could be assigned, transferred, or sublet, and such contracts are frequently hypothecated or pledged to secure funds to enable a party contracting to carry out his obligations. It was a valuable contract, and if it had been genuine and had not been performed by Neilsen & Co. the bank could have carried out the contract for Neilsen and collected the amount due there-

on. The fact that it was agreed that Neilsen should collect the money for the use of the bank does not affect the validity of the transaction so as to make it an instrument not susceptible to forgery, as it would have been valid had it been properly signed by Singletary; and if Neilsen, under the agreement with the bank, had collected the funds, he would have collected them as the agent of the bank, and would have been guilty of crime had he converted them to his own use without the consent of the bank. Such fact, however, does not invalidate the transaction between the bank and Neilsen & Co., nor render the contract assigned and pledged incapable of forgery if the name thereto was forged.

It is plain that one of the instructions for the state is erroneous, for the reason that it did not describe or set forth by special reference the particular forged instrument referred to, but read:

"The court instructs the jury for the state that if you believe beyond a reasonable doubt that Pete Neilsen willfully, unlawfully, and feloniously uttered and passed to the Mechanics' State Bank as true a forged instrument, with the intent to defraud, etc."

There was no dispute about the fact as to what instrument was involved in the trial. It was properly described in the indictment, and there was no other instrument in the record which would mislead the jury with reference to such instrument. The other instructions in the case properly describe the instrument forged, and, taking all the instructions together, as we must, and considering them as an entire charge, we do not think this instruction constitutes reversible error.

It is next contended that the granting of the second and third instructions for the state is reversible error. The first instruction read: "The court instructs the jury for the state that if you believe beyond a reasonable doubt, etc."—leaving out the words "believe from the evidence." It is true that this instruction involved did not require the jury to believe from the evidence, but

other instructions both for the state and the defendant required the jury to believe from the evidence; and it is clear and plain from numerous instructions invoked by the defendant that the jury were fully informed that they could found their belief only upon the evidence produced in the case. What is said with reference to this instruction is also applicable to instruction No. 2.

Instruction No. 1 for the defendant requires the jury to believe beyond a reasonable doubt the facts in the case before a conviction can be had. Instruction No. 3 for the jury tells the jury that unless the presumption of innocence of the defendant has been overcome by the state through evidence so strong, cogent, and conclusive as to remove every reasonable doubt arising out of and supported by the evidence, then the verdict should be not guilty. Instruction No. 6 also conveys this idea, as does instruction No. 7. Instruction No. 9 informs the jury that unless they believe from all the evidence in the case beyond a reasonable doubt that the alleged instrument is forged, and that the defendant uttered it, then the verdict should be "not guilty."

It is also urged that there should have been a peremptory instruction for the defendant because there was no dispute as to the testimony of Neilsen that he thought the contract had been duly signed by Singletary, that he was not familiar with Singletary's signature, and that he usually had his manager or foreman to attend to contracts; and for these reasons, although the instrument was not in fact signed by Singletary, he was entitled to such instruction. It is true that if the defendant had found the contract in his files, as he testified he did, and if he had instructed his manager or foreman to procure such contract on the verbal agreement, and if he had assigned it in good faith, believing it to be Singletary's true signature, he would not be guilty of uttering a forged instrument; but we find from the testimony of Singletary that he did not have a contract for three thousand eight hundred dollars, but only a verbal contract for three

thousand one hundred dollars, and that the bank was instructed by him not to notify Singletary that he had hypothecated his contract with the bank, and also the fact that after hypothecating this forged instrument with the bank, and without repaying the money, he fled from the jurisdiction of the state and was passing under an assumed name in a foreign state. These facts are sufficient to warrant the jury in believing his testimony to be untrue, and especially so, as the foreman or manager was not introduced to substantiate that of Neilsen. The jury could well believe that the defendant knew the verbal contract was only for three thousand one hundred dollars; and if he found a contract in writing for three thousand eight hundred dollars, he would know that it did not embody the real agreement and would probably cause trouble should such contract be assigned or hypothecated, and that his request to the bank not to disclose such assignment may have been not for the reasons given by the defendant to the bank, but from the conscious knowledge that the contract was forged and not genuine. The fact of his flight is strongly persuasive of his consciousness of guilt, and the jury were authorized to discredit his statement with these other facts, although no witness specifically denied his statement as to where he found his contract and his good faith in handling it.

We find no error which would warrant us in reversing the case, and it is accordingly affirmed.

*Affirmed.*