YOUNG *v.* STATE.*

(En Banc. May 7, 1928.)

[117 So. 119. No. 27167.]

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 922, n. 3; p. 1234, n. 13; p. 1244, n. 89; 17CJ, p. 169, n. 2; p. 177, n. 88; Homicide, 30CJ, p. 210, n. 93; p. 239, n. 60; p. 245, n. 72; Witnesses, 40Cyc, p. 2437, n. 93; Flight as evidence of guilt in criminal case, see 25 A. L. R. 886; 8 R. C. L. 192.

*J. M. Cashin,* for appellant.

*Rufus Creekmore,* Assistant Attorney-General, for the state.

ETHRIDGE, J. The appellant was convicted of the murder of Cyril Turner, in the circuit court of Washington county, and was sentenced to be hanged, from which conviction and sentence he prosecutes this appeal.

The facts of the case are as follows: The appellant, several days prior to the killing of the deceased, caused the deceased to be arrested on a charge of burning some of his clothes, and. upon investigation of the case the deceased was discharged by the city authorities. Thereafter the deceased was continually joking the appellant about having. been turned loose and about the officers having caught the appellant in a lie. On the evening of the killing, the appellant went to a restaurant near which

the deceased was working as a bootblack in a barber shop, and the deceased, upon seeing appellant, began "jawing" him about the police catching him in a lie. The appellant turned and walked into an alley near by, the deceased following him with a shoe in one hand and a shoe brush in the other, and when they had gone a little way down the alley, the appellant turned, drew a pistol, and fired, shooting the deceased, who ran back to the sidewalk and fell near where he was working. Shortly thereafter the deceased died from the effect of the shot. The deceased, while lying wounded on the sidewalk, requested one of the state's witnesses, who, upon hearing of the shooting, came immediately to the scene, to take everything out of his pockets, which was done, and no knife or other weapon was found upon the person of the deceased. A search was made by the deputy sheriff and police of the city shortly after the shooting. They went to the alley where the shooting took place and searched from there to the street, to see whether or not a knife or other weapon could be found, but after a thorough search none was discovered. After the shooting the appellant disappeared, but he returned to the city subsequently and was found, dressed in a nightshirt, in a house, about three o'clock on Sunday following the killing.

The appellant testified: That when he and a companion of his came to the restaurant, which adjoined the barber shop where the deceased worked, on the evening of the killing, the deceased said, "Here comes that son of a bitch now." That he (the appellant), after placing an order and eating, left the restaurant. That he passed where the deceased was, who, upon seeing him, began to joke him about the policeman having caught him in a lie. That he (the appellant) walked away, but the deceased, following and abusing him, drew a knife upon him, and to prevent the deceased from coming upon him with the drawn knife, he drew his pistol, whereupon the deceased stooped down and picked up a block of concrete

lying in the alley, apparently of strike him. That to ward off the blow, which he thought would prove fatal, he fired the shot which killed the deceased. A witness for the defendant testified in support of this statement, but the witnesses for the state who were looking at the appellant and the deceased from the time they went into the alley until the shooting testified that the deceased did not stoop down and pick up anything, and that he did not have a knife in his hand, but that he held a shoe in one hand and a shoe brush in the other. After one of the defendant's witnesses had testified that the deceased had a knife in his left hand and a shoe brush in his right hand, the attorney for the appellant asked him again: "Do you know which particular hand he had the knife in and which hand the shoe was in?" To which question objection was made and sustained by the court, the defendant having testified that the knife was in his right hand and the shoe in his left. This ruling constitutes the first assignment of error.

We think that this is insufficient to cause a reversal of the case; and while it might have been properly answered, still it was immaterial which hand the deceased had the knife in if he was approaching the defendant with the knife drawn. At all events it is insufficient to cause a reversal of the case.

The second assignment of error is that the court erred in sustaining the motion of the district attorney to exclude that part of the testimony of the witness, Frank Palmer, relating to the threats made by the deceased, and in directing the jury to disregard that testimony. The matter complained of is a statement by the witness that he heard the deceased, the day before the killing, say, "When I get done with that negro the undertaker will be ready for him." The questions and answers on this matter are as follows:

"Q. Did you hear him make any threats on the life of James Young? A. I heard him say, 'When I get

done with that nigger the undertaker will be ready for him.'

"Q. Where was Cyril Turner when he made that remark? A. At the shoe shining place.

"Q. Was that on the evening he was shot? A. The evening before.

"Q. To whom was he referring? A. He was talking to some boys around his stand.

"Q. To whom was he referring? A. I couldn't say; he didn't use any name.

"Q. Did you ever hear him say anything about killing James Young, or any one, prior to that? A. No, sir."

When the direct examination of this witness was completed, with no further evidence to identify the person referred to in the above statement, the district attorney moved the court to exclude that statement, which was done. The record does not show that an exception was taken to the ruling of the court, but if such an exception had been taken, the facts were insufficient to show that the threat made referred to the appellant. Consequently there was no error in excluding this statement.

The third assignment of error is that the court erred in overruling the objection of appellant's counsel to again propound to the witness, Lawrence, questions as to whether he found any knife on or near the person of the deceased, etc. As shown in the record, the person of the deceased was searched, and also the ground between the place of the shooting and where the deceased fell, and no weapon of any kind was found. This was a pertinent fact, as the defense of the appellant that the deceased was approaching him in a threatening manner with a knife was apparently contradicted. The evidence tended to prove that the deceased did not have a weapon, and to support the direct evidence of witnesses that he did not have a knife in his hand at the time he was shot, and to contradict the testimony upon which defendant was relying as a defense.

The fourth assignment of error is of like nature and is clearly without merit.

The fifth assignment of error is that the court erred in overruling the motion of appellant's counsel to exclude the testimony of the witness D. P. Shanahan, to the effect that he and the officers went down the alley where the shooting occurred with a searchlight and found no weapon of any kind. As above stated, this fact tended to support the theory of the state and to discredit that of the defendant, and it was competent and relevant to the issue.

The sixth assignment of error is that the court erred in refusing instruction No. 8 requested by appellant. This instruction appears to have been marked "given and filed" in the record; but even if it was refused, it is erroneous as drawn, in that it seeks to tell the jury that if the defendant has explained the reason for his flight, it has no right to infer that he is guilty because he fled after the shooting and remained away from Greenville until Sunday morning. The defendant's explanation of his flight is not conclusive upon this proposition. The circumstance of flight is admissible, and, if explained satisfactorily to the jury, it should disregard that fact; but the fact was admitted, and the explanation of the appellant, if any, is for the consideration of the jury, as the jury is the judge of the weight and value of the facts and whether the explanation is reasonable and satisfactory. The mere fact that a defendant makes an explanation of such flight does not of itself remove the presumption or inference that may be drawn from the fact of flight. Consequently the court was not required to give the instruction in the manner in which it was asked.

The seventh assignment of error is that the court overruled appellant's motion for a new trial. Under this assignment it is argued that the court erred in asking the jury certain questions with reference to the infliction of capital punishment, which, it is contended, pressed the matter too strongly upon the jury. There is nothing to

show that the questions and answers set out were actually made in the trial. The *voir dire* examination of the jury was not in the record, and there is nothing to show that the court asked the said questions or that the jury made the answers contended for. Motions are always at issue, are considered denied without formal pleading, and it devolves upon the movant to support the allegations of the motion with proof. There is nothing to show that this was done.

We find no merit in any of the assignments of error, and the judgment of the lower court will be affirmed, and Friday, June 22, 1928, is fixed as the date of execution.

*Affirmed.*