## Alexander *v.* State

No. 43460 February 8, 1965 171 So. 2d 517

*L. L. Puryear, Thomas V. Dixon,* Senatobia, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Brady, Tom P., J.

This is an appeal from the Circuit Court of Tate County, Mississippi by the appellant, who was convicted of the murder of one Ruby Jackson, another man, and was sentenced to serve a life term in the state penitentiary. The appellant employed counsel to represent him in the circuit court, and the court appointed the same counsel to represent him in this appeal, since appellant filed a pauper's affidavit.

A careful study of the record reveals the following facts: Appellant had been out all night drinking, and he was driving with his son on a road past where the deceased, Ruby Jackson, had driven some cows out of Jackson's cornfield, with the help of another, and was heading them down the road. Appellant was accommodating a friend named Willie T. Williams by carrying him toward his home, and the appellant stopped and spoke to one Emmit Jackson, who was herding the cattle, and told him to tell the deceased, Ruby Jackson, that he would be back in a few minutes. The record indicates that on a previous occasion Ruby Jackson had complained to appellant about some damage which appellant's mule had done in Ruby Jackson's cornfield. The appellant had deposited his friend, Williams, and had driven to Emmit Jackson's home when the appellant's son, Larry Alexander, came and asked to be permitted to use the car. Appellant permitted his son, Larry, to drive the car, and the record indicates that he instructed Larry to take him to the deceased's, Ruby Jackson's, home. Appellant and his son testify that he went in

order that he might pay the deceased for the damage which his mule had done to his cornfield.

The evidence is conflicting as to whether appellant knocked and was invited in or whether he went in without invitation, the witness Rossom testifying that the deceased told the appellant, ''Go on back, I don't want you to come in my house.'' It is in conflict also with reference to the statements which appellant made when entering the deceased's home and with reference to the attitude of the appellant. The testimony is in conflict as to whether or not the appellant at this time had in his pocket an open knife which he had concealed, but which was seen at the time by the witness, Emmit Jackson, who was a relative of the deceased. Abusive vile and profane language was used by both the appellant and the deceased. Though the evidence is conflicting, nevertheless the record indicates that the appellant was obviously angry with the deceased for the complaints which the deceased had made about appellant's mule being in the cornfield, when the deceased had not complained about the stock of others which also had gotten into his cornfield. Emmit Jackson testified that once or twice the appellant, with his knife opened but concealed in his hand, started toward the deceased; that he told him, ''Don't come across here with that knife like that,'' and that he then suggested to the deceased that he go outdoors with him, saying: ''Now, I can't stop Dub (the appellant) . . . Ruby, you come on. I can talk to you, but I can't talk to Dub . . . I told Dub, I said, don't you come out here.'' The evidence is conflicting in that Emmit Jackson said he suggested this in order that he could talk to the deceased, in the hope that he might prevent a difficulty or violence. The appellant, on the other hand, testified that Emmit Jackson suggested that they go outside in order that they might there finish the thing, meaning, to fight it out to a finish. State's proof was that the appellant was at that

time concealing an open knife by holding it in his hand with the blade sticking up his sleeve but that the deceased had no weapon of any kind. Appellant admits that as he left the house he opened his knife and put it in his pocket with the blade open, stating that he feared what Emmit Jackson and the deceased might do to him.

On the outside a cursing match took place again and some very vile epithets were used by both the appellant and the deceased. The deceased finally told the appellant not to use certain vile language toward him again: "You call me that again, and I will slap the hell out of you." The appellant did so, and the record is in dispute as to whether or not the deceased slapped at the appellant, striking the bill of his cap with his left hand opened, or whether he struck at him with his closed fist and hit him on the side of his face and his eye. At any rate, the record discloses that the deceased was not armed, though there was lying on the ground two or three steps from him a hand ax; that the appellant sprang forward and struck the deceased one blow with the blade of his knife, plunging it into his heart. The deceased staggered back and slumped down, attempted to pick up the hand ax, was able to raise it a foot or more from the ground, and then fell and was caught by his friend, John Rossom, who had gone out of the house with him and the appellant.

The record shows that the deceased died almost instantaneously; he was picked up and carried and put into the appellant's car and the appellant and his son then took him to the office of Dr. Ethelyn Smith, who stated that the deceased was dead and had died almost instantaneously, there being very little bleeding, from a blow or an incision in his heart. The appellant employed counsel to represent him and then surrendered to the sheriff and was placed in jail. The appellant admitted to Dr. Smith that he had stabbed the deceased

and he admitted to the sheriff and the deputy also that he had stabbed the deceased. Immediately after he had stabbed the deceased and he had slumped to the ground, appellant stated to those persons present: ''I wasn't aiming to hurt this boy. I said, he made me do it.'' The record also indicates further, though the appellant states he did not hear the deceased tell him to go home, that the deceased told the appellant to go home several times. It was undisputed that the deceased was unarmed at the time he was fatally struck by the appellant. The appellant concedes that the deceased had nothing in his hands.

Appellant filed a motion for a new trial, which was overruled, and this appeal was perfected. Appellant assigns two errors, the first being that the court erred in refusing to grant the appellant the following instruction:

''The Court instructs the jury for the defendant, that the law gives one the right when necessary or apparently necessary, to anticipate the attack of his adversary. One is not required to delay his self defense until his adversary is on equal footing with him. If the jury believes from the evidence that the deceased, Ruby Jackson, had made a physical assault upon the defendant, and that deceased was attempting to secure a dangerous weapon, or that his acts were such that the defendant had reason to believe that deceased was attempting to secure such a weapon with which to make an attack upon him and that he was in danger or reasonably thought he was in danger of losing his life or suffering great bodily harm at the hands of deceased, then the defendant had the right to use whatever means he could to stop deceased from inflicting such bodily harm and if the means used by defendant in preventing such onslaught caused the death of deceased, then defendant is not guilty and the jury will so find.''

 █ It is the contention of the appellant that the testimony justifies the granting of the instruction which the court refused and that the rights of the appellant were seriously imperiled by this refusal. The circuit court committed no error in refusing this instruction for several reasons, two of which will suffice to show that the instructions was erroneous. First of all, the testimony wholly fails to show that at the time the deceased struck or struck at the appellant he was attempting to secure a dangerous weapon or that his acts were such that, at the time, the defendant had reason to believe that the deceased was attempting to secure such a weapon. This portion of the instruction is unsupported by the testimony in this case. The testimony wholly fails to show that the deceased made any effort to pick up the hand ax until after he had been stabbed in the heart by the appellant. The fact that the deceased was in some proximity to the ax cannot be construed to constitute an attempt to secure and use it. Such an attempt requires an overt act on the part of the deceased prior to the time he was mortally stabbed by the appellant.

 █ The second reason why this instruction was properly refused is that the court had granted the appellant an instruction covering the law with reference to the right of a person to resist threats and physical force and to repel an assault and to defend himself. The appellant secured two instructions on this rule of law but one will suffice, which is as follows:

"The Court instructs the Jury for the defendant that the right of self defense is one of our inalienable rights. Any person assaulted by another has the right to repel such assault by such means and force as may to him be apparently and reasonably necessary. He should be judged in the light of the circumstances then apparent to him, rather than in the light of after developed facts.

"If you believe from the evidence in this case that the defendant, J. W. Alexander, was not the aggressor, and that he was assaulted by threats and physical force by the deceased, Ruby Jackson, then the law of self defense is that the defendant then and there had the right to repel such threats and assaults by using such force as to him was then reasonable and apparently necessary to repel such assault on him and defend himself. If no greater force was under such circumstances then used by defendant, it is your duty to find the defendant not guilty.

"And in this respect, you are further instructed that if the defendant under such circumstances, did use greater force than was to him apparently reasonable and necessary to defend himself, and did so in the heat of passion and without malice and not in necessary self defense then he would be guilty of no greater crime than manslaughter; and in such event your verdict should be 'We, the jury, find the defendant guilty of manslaughter.' "

Frierson v. State, 250 Miss. 339, 165 So. 2d 342 (Miss. 1964); Whitehead v. State, 246 Miss. 530, 151 So. 2d 196 (1963); West v. State, 233 Miss. 730, 103 So. 2d 437 (1958); Rose v. State, 222 Miss. 699, 76 So. 2d 835 (1955); Thigpen v. State, 219 Miss. 517, 69 So. 2d 241 (1954); Bramlett v. State, 37 So. 2d 305 (Miss. 1948); Neilsen v. State, 149 Miss. 223, 115 So. 429 (1928).

 ██ The second error assigned is that the court erred in overruling the motion of the appellant for a new trial on the grounds that the verdict of guilty was not supported by the evidence. The record is one of a typical homicide case where there are sharp conflicts in the testimony for the state and for the appellant and in which there is even inconsistency in one or more witnesses' testimony. Under the indictment, the proof of the state is sufficient, if believed by the jury, to convict the appellant of the charge of murder. The

state's evidence was sufficient to show that the appellant stabbed and killed the deceased without provocation and not in necessary self defense. The proof is uncontradicted that the deceased was unarmed at the time he was stabbed by the appellant. As we have consistently held, the jury is the sole judge of the credibility of the witnesses, the weight and the worth of their testimony. The jury has the right to believe a part of the witnesses' testimony and disbelieve other parts, and arrive at the truth as to what transpired. Bond v. State, 249 Miss. 352, 162 So. 2d 510 (Miss. 1964); Matthews v. State, 243 Miss. 568, 139 So. 2d 386 (1962); Cobb v. State, 235 Miss. 57, 108 So. 2d 719 (1959); Ivey v. State, 206 Miss. 734, 40 So. 2d 609 (1949). *Cf.* also Rogers v. State, 222 Miss. 609, 76 So. 2d 702 (1955); Scott v. State, 185 Miss. 454, 188 So. 546 (1939); Woodward v. State, 180 Miss. 571, 177 So. 531 (1937), *sugg. of error* 178 So. 469 (1938); Witt v. State, 159 Miss. 478, 132 So. 338 (1931); Evans v. State, 159 Miss. 561, 132 So. 563 (1931); and Young v. State, 150 Miss. 787, 117 So. 119 (1928).

After careful consideration, we are forced to the conclusion that the jury was justified in finding by its verdict that the appellant was guilty of murder. Therefore, the verdict of the jury and the judgment of the trial court is hereby affirmed.

Affirmed.

*Kyle, P. J., and Gillespie, Jones and Inzer, JJ.,* concur.