BRADY, Justice.
This is an appeal from the Circuit Court of Jackson County, Mississippi, wherein the appellant, Robert Lee Vanderpoel, was convicted of the crime of false pretenses and sentenced to serve a term of three years in the Mississippi State Penitentiary. From that judgment this appeal is taken.
The appellant, an airman, had been stationed at Fallon, Nevada, but was on temporary duty at the computer school at Keesler Air Force Base in Biloxi, Mississippi. The indictment against the appellant provides as follows:
[T]hat Robert Lee Vanderpool (sic) * * * on the 10th day of August * * 1968 * * * did unlawfully, wilfully, feloniously, falsely and fraudulently aid and assist one William Thomas Smith in representing the said William Thomas Smith to an agent of Durbin’s TV center, Ocean Springs, Mississippi, as one Lt. James L. Dean, and did wilfully, unlawfully, feloniously, falsly (sic) and fraudulently obtain one hutch type television set and one green Imperial 90 model dishwasher, a better description being to your Grand Jurors unknown, of the total and aggregate value of $1,564.-95, of the property of James Durbin d/b/a Durbin’s TV Center, well knowing that the said William Thomas Smith was not, in fact, the said Lt. James L. Dean, and thereafter did unlawfully, wilfully, feloniously, falsely, and fraudulently aid and assist the said William Thomas Smith in making, issuing and delivering unto an agent of Durbin’s TV Center a check in the amount of $1,564.95 well knowing the same to be insufficient, all with the felonious intent of him, the said Robert Lee Vanderpool (sic), to wil-fully, unlawfully, feloniously, falsely and fraudulently cheat and defraud the said *923 James H. Durbin d/b/a Durbin’s T. V. Center, of the sum of $1,564.95.
At the outset, it has long been a rule of law in this state, as reflected by our decisions, that the uncorroborated testimony of an accomplice must be viewed with great caution and suspicion. The accomplice, William Thomas Smith, over a year ago, pled guilty to a similar indictment but has never been sentenced and is the state’s chief prosecuting witness in this trial. It is largely upon the testimony of this witness that the proof of the state rests.
The salient facts in this case, as reflected by the record, necessary for resolving the issues are as follows: William Thomas Smith testified that on or about August 9, 1968, the appellant, a male, thirty-six years old and a computer specialist, went into the TV and appliance store operated by Mrs. James H. Durbin. We will endeavor to show that the testimony of Accomplice William Thomas Smith, hereinafter called Accomplice Smith, is corroborated in part by the testimony of the appellant. Accomplice Smith testified that he, Frank Ellsworth, Kyler Davis and the appellant conspired together to get from Durbin’s TV Center a very expensive TV hutch and dishwasher. It was understood between them that Accomplice Smith would pretend to be a First Lieutenant in the United States Air Force named James Dean. It was agreed further that an account would be opened at the People’s Bank of Biloxi, and the record reflects that this was done, Accomplice Smith testifying that appellant furnished him with $20 and a social security number so that the account could be created. Accomplice Smith further testified that it was agreed that he would rent and obtain an apartment in a good neighborhood, which was later designated as the place to which the TV hutch and dishwasher were to be delivered. The record does not disclose that there is a First Lieutenant James L. Dean in the United States Air Force at Biloxi, Mississippi.
Appellant admits that on August 9, 1968, he went into the TV and appliance store operated by Mrs. Durbin. He alleges that he went there for the purpose of procuring a portable TV for himself. He admits talking to Mrs. James H. Durbin, who apparently at the time did not know Accomplice William Thomas Smith who was not in the store at that time. Appellant further admits that he was introduced to William Thomas Smith in Allen’s TV shop on August 8, 1968. It appears that this was a day or so before the TV was actually purchased.
Accomplice Smith testified that he took his father’s captain’s bars which his father had earned in World War II, and that Frank Ellsworth cut them down in size so that they would appear to be lieutenant’s bars; that Ellsworth and the appellant had furnished him with an Air Force enlisted man’s cap and an Air Force belt and buckle to go with the captain’s bars.
Appellant Vanderpoel admitted that after he had been in Mrs. Durbin’s TV store and after she had shown him the televisions which she had for sale he stated to her, just “as she stated earlier — I did state that I had a lieutenant friend that was looking for one of them, who I did. And I stated this friend’s name. She said she didn’t recall that. And I’m sure I stated his name as James Kelly.”
Mrs. James H. Durbin corroborates this conversation of the appellant because she testified as follows:
He came in, he looked around at some portable televisions. I stood with him up close to the front door of the store. Toward the middle, rear, of the store we had a hutch, which is the largest thing that RCA builds of color television, radio, stereo combination, and he looked over at it, and he said, “Oh, I see you have one of those Hutches.” I said, yes, I do. And he said, “I have a friend that’s been looking all over for one of those.” He said, “In fact, he tried to get one at Byrd’s,” which is another television place, in Biloxi, — “to special order one *924 for him, and they didn’t have one.” He says, “If I see him tonight, I’ll tell him that you have one, so he can come in and get it.” He said, “He’s just recently married, he’s just a little young punk. He’s a 2d lieutenant out at the Base. I don’t know what he’s doing in the Service, anyway, because his father is a millionaire, but,” he says, “if I see him tonight, I’ll send him in.”
As aforesaid, the appellant admitted that he had a lieutenant friend who was looking for a hutch television and, although appellant contends he said the friend’s name was James Kelly, Mrs. Durbin emphatically states that he said his friend was Second Lieutenant James Dean. Thus, the entire structure or basis for the scheme of obtaining the TV hutch and dishwasher was put in motion by the appellant according to the testimony of Mrs. Durbin and Accomplice Smith, which was corroborated to some extent by the appellant himself.
Accomplice Smith testified that on August 10, following the conversation which appellant had with Mrs. Durbin, he went to Durbin’s TV store, dressed in a first lieutenant’s uniform. He selected and approved the hutch and the dishwasher and he made a $10 down payment thereon. He stated that he had to go to New Orleans that afternoon to get his wife but that upon his return he was very anxious to have the TV sent to his apartment, which he had rented in accordance with the plot. Before Durbin’s TV store had closed, Accomplice Smith telephoned and begged Mrs. Durbin to send the TV hutch and dishwasher to his apartment, which she did. Accomplice Smith admits that he made out a check payable to Durbin’s TV Center in the sum of $1,564.95 drawn on the People’s Bank of Biloxi, where the $20 deposit had been made. This check was signed by James L. Dean. A receipt showing the $10 cash payment and payment in full was obtained, according to Accomplice Smith’s testimony, but the record fails to reflect that the receipt was offered in evidence. These transactions took place on the night of August 10.
The record reflects that Appellant Van-derpoel was a close personal friend of Mr. Ellsworth; that he had gone into Mrs. Durbin’s store another time with Mr. Ells-worth, as reflected by this question and answer:
Q Now, were you there just before this alleged check cashing scheme went on to buy the stuff ?
A Unfortunately, yes. I went back over with another guy, Frank Ells-worth and myself, and he was looking for some stuff.
The record further reflects that upon appellant’s return to Biloxi, after the charges had been made against him, he spent the night with Ellsworth, which also evidences the close friendship which existed between them. The record discloses that after Accomplice Smith had obtained the TV hutch and dishwasher which were delivered to his apartment he went to the apartment of Appellant Vanderpoel and there he picked up the trailer at Vander-poel’s Forest Park Apartment for the express purpose of loading the TV hutch and dishwasher in it and delivering it to Appellant Vanderpoel.
In passing, it is strange indeed that although Appellant Vanderpoel had seen this hutch at least once or possibly twice before, he was unable to tell if the TV hutch which was delivered to him was the same one which he had seen and talked to Mrs. Dur-bin about, as reflected in the following statement:
Q Now, when you received this hutch and sink from this Lieutenant, James Dean, did you recognize it as being the same one you looked at at Durbin’s ?
A There was no way I could tell. It was laid face down and all I could see was a bunch of crating.
It is also strange that a man would buy an expensive TV hutch without being certain that it was a fine TV hutch such as the one which he had seen in Durbin’s TV Center.
*925 The record discloses that he bought this merchandise from William Thomas Smith, who admits that he posed as James L. Dean. The record discloses that he charges he bought it on August 11 although there is conflict as to whether he bought it on the night of August 10, the record not being clear in this regard, but he admitted that he had gone to Mrs. Durbin’s TV Center the day before and had made statements to her regarding the lieutenant who had a millionaire or wealthy father. After the TV hutch and dishwasher had been loaded into the van which appellant had rented, it was taken to his apartment in Biloxi and one Kyler Davis was present at the time the merchandise was delivered to the appellant. Accomplice Smith testified that $500 was given to him by the appellant to be divided three ways between Accomplice Smith, Kyler Davis and Frank Ellsworth. The record discloses that two men would not be able to load or unload this large, heavy TV hutch into the trailer; that it would require more than two men to do this. The record also discloses that not only was the appellant indifferent as to whether he was obtaining the same TV hutch which he had seen but he was also indifferent as to the cost thereof since he said that all he was interested in was being sure that Durbin’s TV Center had been paid in full.
Although the appellant claimed that he had never met or known Accomplice Smith prior to the purchase of the TV hutch, he nevertheless admitted that he had been introduced to Accomplice Smith by Conspirator Ellsworth when he was in Allen’s TV shop which, according to Accomplice Smith, was on August 8 or 9, 1968. Two statements were given by Accomplice Smith. The first statement given on September 11, 1968 to FBI Agent James J. Files, is in sharp conflict with the second statement given by Accomplice Smith on September 17, 1968 to Officer W. D. Broome. Regarding the first statement, Officer Broome testified that the description of the man with whom Accomplice Smith was working was undoubtedly that of Kyler Davis. The description given in the second statement was that of Vander-poel. The testimony which Accomplice Smith gave likewise contradicts both statements and is otherwise in conflict in various and sundry ways.
Appellant Vanderpoel testified that because Accomplice Smith’s wife was leaving him and he was going back to live on the base he would have no room for the TV hutch or dishwasher and therefore he would sell them to the appellant for the sum of $775. A receipt was taken by the appellant and signed “James L. Dean, 1st Lt. USAF.” It should be noted that the appellant paid no attention to the date or the amount of the receipt given to James L. Dean by Durbin’s TV Center.
The morning following the loading of appellant’s trailer he left, as he had planned to do, for Fallon Air Force Base in Nevada, and Accomplice Smith left to visit his girl friend in San Antonio, Texas. The purchase of the merchandise and the resale to Appellant Vanderpoel took place on Saturday subsequent to the time the banks had closed, and both Smith and Vanderpoel were beyond the jurisdiction of this state on Monday when the check was presented and payment was refused because of insufficient funds.
It appears that Appellant Vanderpoel has a clean record and has not been arrested for any crimes or misdemeanors. At the end of the testimony the appellant’s attorney moved for a directed verdict, which the court overruled, allowing the case to go to the jury. However, the court made the following statement:
Well, I must say that when you consider the evidence which has been presented, the evidence from the chief prosecuting witness of the State, the man admitted felony, admitted telling numerous lies in relation to this case, and then the testimony against this defendant here and his record, it’s hard for me to believe that a man would subject himself to perjury and get on the stand as he did, and it not be the truth.
*926 Taking both sides, certainly the more believable evidence, in my judgment, is with your client. But still, I feel like the State has made out a prima facie case, and it will have to go to the jury, even though it’s hard for me to see, maybe, how a jury would be able to convict him. (Emphasis added.)
The issue was submitted to a jury which returned a verdict of guilty and the appellant was sentenced to serve a term of three years in the Mississippi State Penitentiary.
Initially, while the state made out a prima facie case for consideration by the jury, the state still had the burden of showing affirmatively by proof beyond a reasonable doubt the existence of every material fact or ingredient which the law requires. The jury determines from all the evidence whether or not the state has done so. Averitt and Livingston v. State, 246 Miss. 49, 149 So.2d 320, 10 A.L.R.3d 1111; appeal dismissed and certiorari denied 375 U.S. 5, 11 L.Ed.2d 38, 84 S.Ct. 51, rehearing denied 375 U.S. 936, 11 L.Ed.2d 268, 84 S.Ct. 328 (1963); White v. City of Philadelphia, 197 Miss. 166, 19 So.2d 493; suggestion of error overruled 19 So.2d 744 (1944); Page v. State, 160 Miss. 300, 133 So. 216 (1931).
The appellant assigns six errors but it is unnecessary for us to consider but three in reaching a conclusion as to the disposition Of this cause. These three errors are, first, that the court erred in allowing the verdict of the jury to stand for the reason that the verdict of the jury was against the overwhelming weight of the evidence; second, that the court erred in not suppressing the testimony of the state’s witness, William Thomas Smith, erroneously designated by appellant’s attorney as Thomas E. Smith; and third, that the court erred in granting the third instruction for the state.
Insofar as suppressing the testimony of the state’s witness, William Thomas Smith, is concerned, the state was entitled to present to the jury this testimony for whatever it was worth. Wilson v. State, 234 So.2d 303 (Miss.1970); Hutchins v. State, 220 So.2d 276 (Miss.1969). Without this testimony the state could not have established the charges set forth in the indictment.
It is to be noted that conviction can be obtained upon the uncorroborated testimony of an accomplice but when it is so based then strict rules relating to the testimony must be followed. This has application to the first error assigned, namely, the appellant vigorously urges that the verdict of the jury was against the overwhelming weight of the evidence. We point out that the state’s case is based largely upon the testimony of Accomplice Smith. It should be remembered, however, that the testimony of Accomplice Smith is not uncorroborated but material elements thereof are substantiated by the testimony of the appellant. The true issue in this cause is, therefore: Was the testimony of Accomplice Smith so uncorroborated as to make it improbable, self-contradictory, not reasonable and substantially impeached? Although Accomplice Smith admitted that he lied when giving his first and second statements, and also apparently appellant did not tell the truth when testifying as to sundry matters, nevertheless the appellant, by his admission, corroborates the essential facts sufficiently so that the jury could hold that the appellant was part and parcel of the scheme to eheat and defraud James H. Durbin, d/b/a Durbin’s TV Center. The appellant corroborated the testimony of Accomplice Smith when he admitted that he was introduced to Accomplice Smith by Frank Ellsworth at Allen’s TV shop. Accomplice Smith testified that a scheme was concocted whereby he would pretend to be one James L. Dean and he would purchase from Mrs. Durbin a TV hutch. The record reflects that the scheme called for one James L. Dean to pretend to be a lieutenant in the Army Air Force, the son of a millionaire or wealthy father, who was interested in purchasing a hutch TV. The appellant on August 10, 1968 went to the place of business of Mrs. Durbin and told her he had a lieutenant friend whose father *927 was wealthy and who was interested in such a TV hutch as she had and if he saw him he would send him to her. This is exactly what was planned except that the appellant testified that he said the man’s name was James Kelly and not James Dean. The record discloses that Ellsworth, who was a close intimate friend of appellant, and Accomplice Smith knew that he had obtained a trailer preparatory to returning to Fallon Air Force Base and that the trailer was parked at his apartment. Subsequent to having Mrs. Durbin deliver the TV hutch and dishwasher to Accomplice Smith’s apartment which was obtained for the purpose of receiving this merchandise, the trailer which the appellant had obtained was borrowed from him by Accomplice Smith, alias James L. Dean, the same day Accomplice Smith received the TV hutch, and the hutch and dishwasher were taken out of Accomplice Smith’s apartment. All of this apparently transpired on Saturday subsequent to the closing of the banks and the spurious check could not be presented. All parties left the next day, appellant taking the TV hutch and dishwasher with him to Nevada and Accomplice Smith going to Texas. The testimony of the accomplice, corroborated by appellant, presented purely a question of fact to be determined by the jury as to whether or not appellant was an integral part of the conspiracy and plan to cheat and defraud Durbin’s TV Center of the merchandise in question.
Conceding the issue of fact to be close, as evidenced by the sage remarks of the trial court, nevertheless the verdict is not against the overwhelming weight of the testimony as it is corroborated by statements of the appellant, and therefore we feel that the proof is sufficient to justify the jury’s verdict. Murphree v. State, 228 So.2d 599 (Miss.1969); McLelland v. State, 204 So.2d 158 (Miss.1967); Alexander v. State, 251 Miss. 847, 171 So.2d 517 (1965); Bond v. State, 249 Miss. 352, 162 So.2d 510 (1964); Matthews v. State, 243 Miss. 568, 139 So.2d 386 (1962); and Scott v. State, 185 Miss. 454, 188 So. 546 (1939).
There is no merit in appellant’s contention that the granting of Instruction No. 3 to the state constitutes reversible error. This instruction, although somewhat lengthy in that it follows the language of the indictment, nevertheless when it is considered with all the other instructions given in this cause, is not erroneous and does not constitute reversible error.
In conclusion, the epilogue to this well planned strategem should be interesting and is graphically illustrative of two profound truths, the first of which is, “be sure your sin will find you out.” (Numbers 32:23.)
After leaving his girl friend in San Antonio, Texas and en route to his base in North Carolina, Accomplice Smith stopped off in Biloxi and there he returned to his old haunt, “The Fiesta Club.” At precisely the same time, Mrs. Durbin’s son was in the club and recognized Smith, alias Lt. James L. Dean. Mr. Durbin reported his presence to the police who promptly arrested Smith. Smith’s statements implicated the appellant, Frank Ellsworth and Kyler Davis.
The acts and testimony of Smith and the appellant establish the infallibility of the second truism, which ironically is quoted often by the underworld in justification of their fraudulent confidence schemes, namely: “You can’t con an honest man.”
For the above reasons, the judgment of the lower court is affirmed.
Affirmed.
GILLESPIE, P. J., and RODGERS, JONES and INZER, JJ., concur.