# WOODWARD *v.* STATE.

(Division B.   Dec. 13, 1937.)

[177 So. 531.   No. 32991.]

E. L. Lamar, of Calhoun City, and Creekmore, Creekmore & Capers, of Jackson, for appellant.

**E. L. Lamar**, of Calhoun City, and **Creekmore, Creek-more & Capers**, of Jackson, for appellant on Suggestion of Error.

**W. D. Conn, Jr.**, Assistant Attorney-General, for the state.

**Ethridge, P. J.,** delivered the opinion of the court.

Winston Woodward, appellant here, was tried in the circuit court of Calhoun county on an indictment charging him with the murder of Walter Roberts; convicted of manslaughter; and sentenced to serve ten years in the State Penitentiary, from which this appeal is prosecuted. Walter Roberts was shot in his leg, which shot severed the main artery.

There is a great deal of conflict in the testimony. It appears from the evidence that on Sunday afternoon, April 19, 1936, Lillian Griffin, one of the witnesses, was riding around with appellant and others in an automobile belonging to John Roberts, father of the deceased; that later in the evening she went with Walter Roberts and others to church, leaving the church with them, and Roberts was driving; she was on the front seat with him, and Annetta Griffin and Leonard Jamieson were on the back seat; that they stopped and parked in front of the house of Willie Woodward, and while there Taylor Woodward and Winston ,Woodward, appellant, drove up behind them and stopped, got out, and started into the

house; that Walter Roberts turned his lights on them; that when this happened, appellant asked him why he did so; nobody answered, and Walter Roberts turned the lights out, and in a few minutes they drove off and in about five minutes came back and parked in the same place; that then appellant came up and again stopped right behind them; that appellant came up in front of their car with a shotgun in a shooting position; that she thought it was time to leave, and got out of the car and ran into the house, after which she heard two shots; that the louder shot was the first one.

Annetta Griffin testified to these same facts, stating that Lillian Griffin started out of the car and appellant told her to get back in, but instead she jumped out and started towards Willie Woodward's; that she then got out of the car and proceeded to leave too, and, when she got in the house, she heard two shots; that the first shot was the louder of the two.

Leonard Jamieson testified that he was with Annetta Griffin on the back seat of the car when it was parked in front of Willie Woodward's house, and Walter Roberts and Lillian Griffin were on the front seat; that a car parked behind them and Winston Woodward, appellant, Oren and Taylor Woodward got out of it and started in the house; that Walter Roberts turned the lights on them, but, upon being asked not to, he turned the lights off; that they then drove off and returned in 30 minutes to the same parking place, and a car parked behind them, and appellant came up with a shotgun in his hands in a shooting position, and fired it at Walter Roberts, who, at that moment, had his hand over the back seat and got his pistol out of the car pocket, but just as he did so he was shot by appellant, and Roberts shot his pistol through the board of the car into the ground; that appellant, Oren and Taylor Woodward then left, and he carried Walter Roberts to the physician's house.

E. L. Moore testified that Leonard Jamieson lived

on his place, and that, after the killing, Jamieson took him to the place where Walter Roberts' car had been parked, and he found a bullet hole, on making an examination of Roberts' car, in the floor board, and dug up a bullet out of the ground, which bullet was offered in evidence.

E. S. Cook, marshal of Calhoun City, testified that he talked to Jamieson, who told him he did not know who killed Walter Roberts.

Tolley Williams said that three or four days after the homicide Lillian Griffin told him that Taylor Woodward shot Walter Roberts, and Evaline Deloach said that she told her the same thing on the day after the killing.

Taylor Woodward testified that he left the church with Winston Woodward; that they parked in front of Walter Roberts' car and the lights were turned on them; that appellant said, "Don't turn those lights on," and Roberts said, "You country son of bitch, if you dont like it I will shoot hell out of you;" that Walter Roberts had a shiny pistol in a shooting position; that they had gone to get Oren, and that he (the witness) came out and drove off to a CCC camp, and on the way overtook Oren, and they returned to James Holland's house for appellant, and parked behind the Roberts car; that he (witness) started after appellant, Winston Woodward, walked up to the Roberts car and said, "Good evening, how are you all," and that nothing was said in reply; that in about two minutes appellant walked up and asked who was in that car, and some one told him Walter Roberts; that appellant and the witness started off and Walter Roberts said, "Hold on there, I want to see you," and about that time a pistol fired and the blaze from the pistol went right out toward Winston, who was neither saying or doing anything to Walter Roberts.

James Holland testified he heard two shots outside his house and that the first one sounded like a pistol because it went "bow" and the last one was a shotgun because it went "boom." He further testified that, when Roberts

found out earlier in the evening that Annetta Griffin had gone off with the Woodward boys, he said, "If the Woodward boys ever crossed his trail he was going to kill them," and that Roberts then had a shiny pearl-handled pistol.

Willie Sam Chandler testified that on the night before the killing Walter Roberts came to her home with Lillian Griffin and asked her where she had been all the evening, and, when she told him she had been with the Woodward boys, Roberts said, "Some one is going to get killed tonight." In rebuttal, Lillian Griffin testified that Roberts did not exhibit a pistol at that house, nor did he make any such statement as testified to by Willie Sam Chandler.

James Holland signed a statement, and in arguing the case the district attorney started to read this statement, to which objection was made and sustained.

At the September 1936 term the first term of the court after the killing, application was made for a continuance on the ground that Oren Woodward, who seems not to be related to appellant, was absent, and process was issued to several counties to secure this witness, but he was not found. The case was continued, and when tried the witness, Oren Woodward, was sick, and there was testimony to the effect that he was unable to attend court, and it was thought he was afflicted with tuberculosis. The court appointed the county health officer to make an examination of Oren Woodward and report to the court, which report showed that Oren Woodward was able to attend court, having been suffering from pleurisy, which had cleared up considerably, and it would not endanger his health or life to attend court. The court thereupon offered to furnish a conveyance to bring Oren to court, but this was not accepted, and motion was made for another continuance, which motion was overruled. It was stated that an affidavit of the sick witness was attached to the motion, and that said Oren Woodward, the sick witness, signed this affidavit

and knew nothing further than what he stated, and if in court he would testify in accordance therewith, that at the time of the shooting between Walter Roberts and Winston Woodward the affiant was seated in his car immediately behind the Roberts car and that the first shot came out of the Roberts car; that no one got out of Roberts car except one girl; that affiant remained in his car for some ten or fifteen minutes after the shooting and the alleged eyewitness, Leonard Jamieson, did not get out of the car but that he walked up to the Roberts car from the south some ten minutes after the shooting was over, and that appellant fired after he was fired upon by some one in the Roberts car, and had not done or said anything until he was fired upon.

The court had sufficient evidence to find as it did that Oren Woodward was able to be brought into court, consequently, there was no error in overruling the motion for a continuance. There was evidence also that between the time the car lights were flashed upon appellant and the time of the shooting the appellant went to another party, procured a shotgun, and then returned to the scene of the shooting.

Complaint is made as to the fourth instruction, which reads as follows: ''The court instructs the jury for the State; That if you believe, from the evidence in this case, beyond a reasonable doubt that the defendant armed himself and went out seeking the deceased for the purpose of killing him, or doing him great bodily harm, the deceased had a perfect right to defend himself, and to use such force as was reasonably necessary to protect his life and person from such attack, and the defendant had no right to shoot the deceased and kill him to overcome the efforts of the deceased to defend and protect himself against such attack, and in so doing, his said act in shooting and killing the deceased was not lawful self-defense; and if you believe, from the evidence, beyond a reasonable doubt that the defendant did so shoot and kill the deceased to overcome

the reasonable efforts of the deceased to defend and protect himself against the defendant's attempt to kill him, or otherwise do him great bodily harm, then the defendant is .guilty of murder in such killing, and the jury should so find, even though the jury may further believe, from the evidence, that the deceased then and there undertook to use his pistol to so defend and protect himself against such dangerous attack.''

In our opinion, this instruction does not fall within the decisions relied upon. It will be seen that this instruction does not undertake to announce the principles covered by those decisions. It proceeds upon the theory that, if the appellant armed himself, went to the scene of the killing, and began the attack, he could not rely upon self-defense. There is a clear distinction between the principles announced in the case at bar and the principles announced in those decisions, for, if a person arms himself for the purpose of provoking a difficulty, and does so intending from the outset to use the weapon if necessary to overcome resistance, then he would have no right to rely upon self-defense. But, if he arms himself for the purpose of killing and does kill, the fact that the person killed tried to defend himself does not give rise to justification.

We do not think the giving of this instruction was erroneous.

We have examined the other assignments of error, and do not think they merit discussion.

Therefore, the judgment of the court below will be affirmed.

**Ethridge, P. J.,** delivered the opinion of the court on suggestion of error.

The appellant was convicted of manslaughter, and the judgment was heretofore affirmed, and reported under the style of Woodward v. State, 177 So. 531. On the suggestion of error it is insisted that there

is no evidence to show that the appellant procured a shotgun for the purpose of assaulting or killing the deceased, or when, under what circumstances, or for what purpose, he procured the gun with which the deceased was killed; and that there is no evidence warranting the giving of the instruction for the State, set out in the opinion in 177 So. 531, at page 533.

It is true that no witness directly testified as to when and where the gun was procured, or for what specific purpose. There is an old maxim to the effect that "Actions speak louder than words," which is applicable here. The jury had a right to draw inferences from all the evidence in the case, and to accept the testimony of some witnesses in part, rejecting other parts; and to accept part of the evidence on behalf of the State, and part of that on behalf of the defendant; and, after finding the facts, to draw reasonable inferences therefrom.

It appears clearly from the testimony of State witnesses that on the evening of the killing, and prior thereto, the defendant and others in the car with him, drove up in front of the house where the deceased and three other persons had already arrived and were sitting in the parked car; that the defendant and his brother started into the house, whereupon the deceased turned the light of his car upon them. The defendant, appellant here, asked why he had flashed that light on; the State witnesses testified that nobody answered appellant, but that deceased turned the light off; however, the brother of appellant, testifying for him, gave a different version of what happened at that time, some time prior to the killing. The brother of appellant stated:

"We parked there and started down to James and he turned the lights on, and Winston said don't turn those lights on.

"Q. Did anyone in the car say anything? A. Walter said if he did not like it he would turn them on again and Winston said don't turn them on and Walter Roberts got out and said: You country son-of-bitch if you

don't like it I will shoot Hell out of you, talking to Winston.

"Q. What did this Walter Roberts have in his hands at that time? A. A Shiny pistol pointed in his hand like this, (indicating the pistol to be in a shooting position).

"Q. What did you all do then? A. Went on down to James' house.

"Q. How long did you stay there? A. Not long.

"Q. What did you go down there for? A. To meet Oren."

The three witnesses for the State testified as to these circumstances, denied that the deceased drew any pistol, or used any such language as above testified to by the brother. The testimony for the State showed that appellant and those with him drove off; the deceased and his companions also driving away, later returning and parking near the place where they had formerly parked; that thereafter the appellant and his brother, and others, returned in the car approximately to the place occupied by them on the first occasion, the appellant got out of the car with a shotgun, and approached the car in which the deceased sat, in a drawing position, or shooting position, as it was then expressed. The two girls in the car got out and ran into the house before which the cars were parked, and about the time they got into the house a shotgun was fired, and in a short time, a pistol.

The witness Jamieson, who was in the car with deceased, testified that the deceased did not draw a pistol, did not get out of the car, and did not have a pistol drawn when the appellant approached the car with a shotgun in shooting position; and, also, that the appellant fired the first shot, while the deceased was attempting to get his pistol from the pocket of the car, reaching over the back of the seat; that the pistol of deceased was fired, not toward the appellant, but down in the back part of the car through the floor.

Witnesses for appellant testified that the deceased first

drew his pistol on the appellant on the second meeting. The brother of appellant denied that he accompanied his brother on the return to the scene where the killing occurred; but said that he and others returned in a car, and that soon his brother, the appellant, came up with a shotgun; he did not know where it had been procured. The appellant and his brother came to town that afternoon, and no witness testified that the appellant had a gun on the occasion of the first trouble in regard to turning on the lights.

It is clear, therefore, from the evidence that between the occasion of the first altercation and the killing the appellant had gone away, procured a gun, and returned to the scene of the killing. This much is not in dispute. But the State's witness testified that when the appellant returned with a gun he approached the car with the weapon in shooting position, inquired who was in the car, and thereupon shot the deceased when the latter was doing nothing to appellant. It is true that witnesses for appellant, the appellant himself not testifying, testified that the deceased shot first. One of the witnesses for the appellant stated that the shotgun was fired after the pistol; that he was in the house when the girls ran in, and that he heard the pistol and then the shotgun; but on cross-examination this witness admitted that he had signed a statement subsequent to the killing, to the effect that the shotgun fired first and the pistol second. It is true, this statement was not introduced in evidence in full, but it was exhibited to this witness, and he admitted making the statement, but claimed that it was untrue.

The appellant was arrested the following morning after the killing, and denied that he knew anything about it, according to evidence introduced by the State. While it is the right of the defendant not to testify, and the jury is not authorzied to make unfavorable deductions from his failure to do so, yet when such testimony as was given by the witnesses in this case is introduced,

and the procuring of the gun is unexplained, it is not shown that it was procured for an innocent purpose, the jury have a right to draw inferences from the facts so testified to, and under the circumstances here were warranted in coming to the conclusion that the appellant procured the gun for the purpose of killing the deceased, that he began the difficulty, and fired the first shot. The State had the right, under the given facts, to submit to the jury the question presented in the instruction.

Overruled.

The suggestion of error is overruled.