204 So.2d 158 (1967)
Carl McLELLAND
v.
STATE of Mississippi.
No. 44503.
Supreme Court of Mississippi.
November 6, 1967.
Suggestion of Error Overruled November 20, 1967.
*160 Donald W. Williamson, Meridian, for appellant.
Joe T. Patterson, Atty. Gen., by G. Garland Lyell, Jr., Asst. Atty. Gen., Jackson, for appellee.
BRADY, Justice:
The appellant was indicted and convicted in the Circuit Court of Lauderdale County, Mississippi, for the forgery of a check. From his conviction and sentence of five years in the state penitentiary he prosecutes this appeal.
On January 19, 1966, Sybil Alexander and Charlie Barr were visiting in appellant's home. One of them, out of appellant's presence, wrote out a check for $48.96, signing the name D.W. Carr as maker. Under the signature were the written words "Red Hot Truck Stop," and in the left corner appeared the words and numerals "40 hrs. work." Appellant's twelve year old nephew testified that only he, Sybil Alexander and Charlie Barr were in the room at the time the check was made out and that appellant, upon entering the room was given the check to get it cashed. Charlie Barr, now deceased, and appellant proceeded to a grocery store operated by Joe Burnett to cash the check. Mr. Burnett testified that on January 19 he and Donald Richardson, his employee, were both operating check-out stands in the store when appellant and Charlie Barr presented the check to Richardson in payment for the items which they had selected. Richardson passed the check to Burnett who then called the bank to determine if D.W. Carr had sufficient funds on deposit to cover the check. Assured that he did, Burnett passed the check back to Richardson who in turn passed it to appellant for his endorsement. Appellant claims that he passed the check and pen to Charlie Barr but did not actually see him endorse it. Burnett and Richardson, however, testified that appellant endorsed the check with the name "James Easley," which Richardson did not question because he was familiar with appellant's face but not his name. Richardson also stated that appellant received the cash balance remaining after the purchase price of the groceries was deducted. Appellant denies that he received any money and asserts that Charlie Barr was the recipient. Mr. Richardson testified, as did Joe Burnett, that no one other than appellant wrote anything on the check in his presence.
Mr. D.W. Carr, proprietor of the Red Hot Truck Stop, testified that he had known appellant for approximately seven years but that appellant had never worked for him and that he never had occasion to give *161 appellant a check for anything. He stated positively that the signature appearing on the check as maker was not his signature. Appellant's sister, brother-in-law and nephew each testified that the handwriting on the check was not that of appellant. The bank refused to honor the check and appellant was arrested on January 21, 1966, on a forgery charge. Being unable to make bond, appellant was held in the Lauderdale County jail from the date of his arrest until February 19, some twenty-eight days later, when he was taken before a justice of the peace, Briggs McArthur, for a preliminary hearing. On the date set for the preliminary hearing Constable Harry Hughes escorted appellant from the county jail across the street to the office of the justice of the peace. While en route, appellant voluntarily stated to the constable that he was in a mess and that "they forged a check on Mr. Carr." Appellant then solicited the constable's help in seeing that appellant was sentenced to serve time on the county road rather than being sentenced to the state penitentiary. The constable's reply was: "I told him I didn't know anything about that." Other necessary facts will be discussed under the assignments of error which we will consider.
Appellant asserts that the twenty-eight day delay in carrying him before a magistrate deprived him of his constitutional right to a prompt preliminary hearing with the assistance of counsel and, apparently, that he also was deprived of his right to a speedy and public trial guaranteed by Mississippi Constitution section 26. Appellant cites Sheffield v. Reece, 201 Miss. 133, 28 So.2d 745 (1947) for authority that the legislative purpose of Mississippi Code 1942 Annotated section 2473 (1956) is to prevent an arresting officer from detaining a person for an unreasonable length of time without affording him an opportunity for a hearing on the merits of the accusation against him. Appellant cites no case nor has one been found wherein an unnecessary delay, per se, has precipitated a reversal of the conviction. Appellant also relies on White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), in which the United States Supreme Court reversed a conviction because the petitioner pleaded guilty to a capital offense at a preliminary hearing without the assistance of counsel. The Supreme Court held that in that instance the preliminary hearing was a "critical stage" in the proceedings against the petitioner and reversed under the authority of Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). The record in the case at bar fails to reflect anything which took place prior to or during the preliminary examination that could have been prejudicial to the appellant; and no defenses were required to be raised at that time which could not be asserted later at the trial on the merits.
The nature and purpose of the preliminary hearing in Florida are similar to those of Mississippi. In Barton v. State, 193 So.2d 618 (Fla.Ct.App. 1966), the Florida Court of Appeals said: "Such proceedings partake of the nature of an inquiry and serve only to determine whether or not probable cause exists to hold a person for trial." Id. at 624. This appears to be the general rule with respect to the functions and significance of preliminary hearings in the various jurisdictions. See, e.g., State v. Vogel, 212 A.2d 560 (N.J. 1965); Phelps v. State, 404 P.2d 687 (Okl.Cr.App. 1965); Commonwealth v. Russell, 416 Pa. 546, 207 A.2d 792, 793 (Pa. 1965); and State v. Jackson, 66 Wash.2d 24, 400 P.2d 774, 778 (1965).
We hold, therefore, that the delay in taking the appellant before a magistrate for a preliminary hearing did not deprive him of his right to a speedy trial under section 26 of the Mississippi Constitution or Amendment VI of the United States Constitution and that such a delay without prejudice is not sufficient to require a reversal of his conviction.
*162 Appellant was first indicted at the May 1966 term by the Lauderdale County grand jury and an attorney was appointed to represent him at that time. Before he was brought to trial, however, the circuit judge quashed the grand jury panel and all indictments returned by it. The appellant, still unable to make bond, was bound over to the November term of the grand jury and returned to the Lauderdale County jail. Since there was no certainty that the appellant would be indicted again, his court appointed attorney was allowed the statutory compensation for his services and discharged. Upon being re-indicted in November, appellant's present counsel was appointed to represent him. This second appointment occurred on November 16, five days prior to the date appellant was tried. Appellant asserts that he was deprived of his right to counsel because his first attorney was discharged in May and because the second appointment did not take place until November. As authority for the first argument, appellant cites Winter v. State, 247 Miss. 640, 157 So.2d 127 (1963). In Winter defendant's attorney withdrew on short notice and the defendant was forced to trial without an opportunity to secure another attorney. Such is clearly not the case here. In support of his assertion that he was deprived of his right to counsel because no new attorney was appointed to represent him prior to the November term of the circuit court, appellant cites Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963); Harvey v. State, 340 F.2d 263 (5th Cir.1965); and McKenzie v. State, 233 Miss. 216, 101 So.2d 651 (1958). Neither Gideon nor Harvey had counsel when they were tried and these cases are controlling on the proposition that an indigent defendant is entitled to court appointed counsel.
In McKenzie v. State, supra, the circuit court appointed all nine members of the Newton County Bar to defend McKenzie on a charge of murder. He was being held in the Hinds County jail and none of the nine attorneys appointed to represent him was willing to travel to Hinds County to confer with McKenzie. McKenzie was brought to the Newton County courthouse for his trial and was allowed only a brief consultation with his attorneys prior to the time trial actually began. We held in McKenzie that even though he had nine attorneys representing him, the refusal of any of them to travel to Jackson for consultation and the brief period of time which he had with his attorneys prior to the trial amounted, in effect, to a lack of counsel and therefore a denial of due process. We find nothing similar in the case at bar. Counsel representing appellant had five days in which to interview witnesses, file pleas and prepare himself for the trial of this case. The record discloses that all of this was done and the appellant was most ably represented. The record further discloses that appellant's attorney made no motion for additional time nor did he indicate a lack of time to accurately prepare a defense. We hold therefore that there is no merit in this assignment of error.
Appellant next asserts that the grand jury was illegally and unconstitutionally drawn. The facts and issues upon which this assignment of error is founded are identical to those in Davis v. State, 204 So.2d 270 (Miss. Nov. 6, 1967); Boyd v. State, 204 So.2d 165 (Miss. Nov. 6, 1967); and Northcutt v. State, 203 So.2d 795 (Miss. Oct. 30, 1967). The same testimony has been embodied in the transcripts of each of these cases. Based upon the authorities cited in Boyd v. State, supra, and for the reasons therein stated, we hold that there was no systematic exclusion of Negroes from the grand jury and that appellant's constitutional rights were not infringed either by the exclusion of women from the grand jury or by the manner and procedure in which the grand jurors were drawn. Contrary to appellant's assertions, a fair cross-section of the county was obtained by the method utilized by the board of supervisors and the rule announced in Rabinowitz v. United States, 366 F.2d 34 (5th Cir.1966) does not apply here. It *163 follows, therefore, that the motions to quash the grand jury and the indictment were properly overruled by the trial court.
Appellant next asserts that by trying him at the November term of court the State placed him in double jeopardy. In his brief the appellant states that he was sentenced to serve thirty days in jail at hard labor and that thereafter he was indicted by the grand jury for the crime of forgery at the November term, the indictment being for the same act for which he had served thirty days. Appellant's attorney raised the question of double jeopardy several times during the trial of the case and was overruled each time. The claim of former jeopardy is predicated upon the fact that appellant voluntarily furnished labor to the county by painting the county jail. He was under no obligation to paint the jail and the record fails to show that he was compelled to do so. To the contrary, it discloses that appellant could not make the $1,000 bond or any bond fixed by the court at the May 1966 term. His first attorney, Mr. Dennis Goldman, testified that the agreement with the district attorney was that they would wait at least thirty days more and if he still could not put up a bond appellant would be released on his own recognizance, thirty days being estimated as the time it would take for him to finish his voluntary painting of the jail. Mr. Goldman further stated that he, the sheriff and the jailer reached the conclusion that appellant should go ahead and finish painting, if he wanted to; that appellant indicated that he so desired; and that mercy and leniency would be shown him in return therefor. Appellant continued to paint the jail and after twenty-five days was released by the jailer "Buck" Lewis on his own recognizance to appear at the November 1966 term.
The appellant testified that the circuit judge was present when this agreement was reached but Mr. Goldman's testimony is corroborated by the statement of the trial judge who admitted that he remembered talking to the sheriff, remembered the prisoner standing where he was, and remembered that he was not able to make bond on the charge for which he was being held. The court stated for the record that appellant said he wanted to stay in jail and finish the work which he was doing for the sheriff. Request was made to the court that if he could not make bond but finished the work he was doing that he would be released on his own recognizance to meet the grand jury, which request the court granted. Except for the statement of the appellant there is nothing in the minutes of the trial to contradict the testimony of Mr. Goldman and the trial judge.
Appellant asserts that the agreement between the district attorney and his attorney was to the effect that if he finished painting the jail and did not get into any more trouble he would not again be held accountable for the charge made against him in the indictment of May 15 which was quashed. The trial court repudiated the assertion of the appellant that he was never to be indicted or tried on account of the forgery or false uttering. The trial court asserted that the appellant was merely permitted to be released from jail upon his own recognizance in accordance with the agreement among the county attorney, the district attorney, the sheriff, appellant's attorney, and the appellant himself. The court vehemently denied that there was any understanding with the court that the charges against defendant for forgery would be dropped if he finished painting the jail and committed no other crime. The appellant contends that the lower court erred in not submitting to the jury the question of whether or not an agreement had been reached between the above mentioned persons and the court whereby the appellant would not be tried for the crime of forgery or false uttering if he remained in jail for thirty days, did the painting of the jail suggested, and did not become involved in another law violation. We cannot hold that the action of the officers, including the judge, constitute a conviction or acquittal *164 of the defendant on the May 1966 indictment. We do feel, however, that the appellant could have been misled and that his interpretation of the agreement was incorrect. The record wholly fails to show that the appellant was required to do hard labor in the county jail before conviction of any crime. To the contrary, it shows that the appellant was anxious and willing to do the painting in order that he might gain the good will and assistance of the jailer, the sheriff and the other officers in obtaining leniency for himself in the future.
Appellant also assigns as error the giving of an instruction for the State pertaining to false uttering in that the instruction failed to set out as an essential element that the appellant must have knowingly uttered and published the check with intent to defraud. In Smith v. State, 220 Miss. 67, 70 So.2d 56 (1954) this Court held that the absence from the state's instruction of the necessary element of intent to defraud was cured by the inclusion of all the necessary elements of the crime in the instructions given for the defendant. This Court has held with metronomic regularity that all instructions are to be considered together as a whole and that no error can be predicated upon the failure of one instruction to set out a necessary element of the crime which is included in another instruction. McCoy v. State, 248 Miss. 73, 158 So.2d 54 (1963); State v. Goering, 200 Miss. 585, 28 So.2d 248 (1946); Bailey v. State, 174 Miss. 453, 165 So. 122 (1936).
Appellant contends that the trial court erred in refusing to grant a directed verdict for appellant, in overruling a motion to set aside the verdict of the jury, and in overruling a motion for a new trial both before and after sentence. The motions were properly overruled because the jury is the sole judge of the credibility of witnesses and the weight and worth of their testimony. This wise rule applies with equal force to the State's witnesses and to the defendant's witnesses, including the defendant himself. We have repeatedly held that the jurors may accept the testimony of some witnesses and refuse that of others, and that they may accept in part and reject in part the evidence on behalf of the State and on behalf of accused. Cobb v. State, 235 Miss. 57, 108 So.2d 719 (1959); Ivey v. State, 206 Miss. 734, 40 So.2d 609 (1949); Hill v. State, 199 Miss. 254, 24 So.2d 737 (1946). It is not for this Court to pass upon the credibility of witnesses and where the evidence justifies the verdict it must be accepted as having been found worthy of belief. Matthews v. State, 243 Miss. 568, 139 So.2d 386 (1962); Scott v. State, 185 Miss. 454, 188 So. 546 (1939).
It is obvious that this Court cannot set aside a verdict of guilty unless it is clear that the verdict is the result of bias, prejudice or fraud, or is manifestly against the weight of credible evidence. Marr v. State, 248 Miss. 281, 159 So.2d 167 (1963); Henderson v. State, 187 Miss. 166, 192 So. 495 (1939). Furthermore, all the proof need not be direct and the jury may draw any reasonable inferences from all the evidence in the case. Woodward v. State, 180 Miss. 571, 178 So. 469 (1938), overruling suggestion of error, 180 Miss. 571, 177 So. 531.
It is unquestioned that the appellant went with Charlie Barr to the grocery store of Joe Burnett for the express purpose of cashing the check which Sybil Alexander and Charlie Barr had given him. It is admitted by appellant that he told Mr. Burnett that he thought the check was good and he asked Mr. Burnett if he would cash the check for Charles Barr. The record discloses the following testimony given by the appellant on direct examination:
(A)nd he told the boy to cash it and he handed the check over there and they passed a pen back and laid it on the bar, and I just slid it over to him. * * *
It is obvious that appellant passed the check or the pen to Charlie Barr in *165 order that he might place the endorsement on the back of the check. The record reveals that appellant received merchandise and cash for the check as testified to by Mr. Donald Richardson. It has been clearly established that the check was a forgery. Appellant's defense is that the man, now dead, who accompanied him to the store to cash the check was the guilty party. The testimony presented a typical case for determination by the jury and only the jury could resolve the conflicting facts. Since the testimony was credible and the proof offered was not against the overwhelming weight of the evidence we have no alternative but to uphold the judgment of the jury and the trial court. For these reasons, the judgment is affirmed.
Affirmed.
ETHRIDGE, C.J., and RODGERS, PATTERSON and SMITH, JJ., concur.