CHANDLER, J.,
for the court.
¶ 1. On March 28, 2001, Robert C. Al-bright, Jr. was found guilty of murder of his mother, ‘Tina Albright, and aggravated assault of his sister, Karen Albright. He was sentenced to serve life in the custody of the Mississippi Department of Corree- *1274 tions for the murder, and ten years in the custody of the Mississippi Department of Corrections for the aggravated assault, to run consecutively with the life sentence. Albright has appealed, and raises three assignments of error. Firstly, Albright argues that the trial court erred by admitting gruesome photographs because the photographs were more prejudicial than probative and inflamed the jury. Next, he argues the trial court should have granted his motion for a new trial because the verdict was against the overwhelming weight of the evidence. Finally, he argues that the trial court should have granted his post trial motion requesting testing of Karen Albright’s clothes for traces of her mother’s blood.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Following are the facts consistent with the verdict. About 3:20 p.m. on the afternoon of April 13, 2000, Tina Albright picked up her children, Robert C. Albright, Jr. (Albright), fifteen, and Karen Albright, twelve, from school. Tina was driving her gold Ford Explorer. After running errands, they arrived home in Braxton around 4:00 p.m.
¶ 4. Inside, Tina told Albright to clean up his room and sent Karen to clean up the kitchen. When Karen finished in the kitchen, she went to the living room and started doing her homework at the coffee table. Tina was in the living room. Then Tina arose and went to a door leading into the garage, where she stood playing with the family dog.
¶ 5. At this point, Albright emerged from his room with a .22 caliber handgun in his left hand and began firing into the living room. He fired several shots in the direction of his mother. Karen looked up at Albright and he pointed the gun at her and fired once. She threw up her left hand and her class ring deflected the bullet, leaving her with a minor wound to the hand. Tina ran through the door, through the garage and into the driveway area. Karen crawled around the couch and saw Albright going through the garage door. Then, Karen ran out of the house through a back door.
¶ 6. Karen ran around the house to the front and saw Albright standing in the driveway in front of Tina. Albright was holding the handgun. Karen ran across the yard and into woods at the rear of the property. She stopped running, looked back and saw Albright in front of her mother with his arm raised. Karen turned away, and heard another shot that was louder than the others.
¶ 7. Karen ran through the woods and to a neighbor’s house. Karen told the neighbor that her brother had shot her and her mother, and the neighbor called 911. The police discovered the body of Tina Albright lying in a pool of blood near the driveway. The autopsy later revealed that she received a shot to the chest from a .22 caliber gun, and shots from a .410 gauge shotgun to the side of the left hip, and, fatally, to the hand and head.
¶ 8. Meanwhile, around 6:30 p.m., Al-bright entered Buddy’s convenience store in D’Lo and bought a drink. The store clerk noticed that he was driving a gold Explorer. Around 6:35 p.m., Wesley Red-mund noticed a gold Explorer with its flashers on parked on the north side of the Dabbs Creek bridge. Then, about 6:45 p.m., a neighbor saw Albright arrive at his house driving the gold Explorer.
¶ 9. The police found one intact and two expended shotgun shells outside the Al- *1275 bright house. On 'April 19, the police searched Dabbs Creek. They discovered a .22 caliber handgun with expended shells inside, a .410 gauge shotgun, and intact .410 gauge shotgun shells in the water under the north side of the bridge. Al-bright’s father identified the guns as those that were kept in his son’s room before the murder. Ballistics testing disclosed that the weapons and casings were those used in the shooting of Tina Albright. After three or four days of investigation, the police viewed Albright as the sole suspect. They theorized that Albright followed his mother outside, discovered that the .22 was out of bullets, got the .410 from his room, and then went back outside and killed Tina Albright.
LAW AND ANALYSIS
I. DID THE TRIAL COURT ERR BY ADMITTING PHOTOGRAPHS QF THE VICTIM THAT WERE MORE PREJUDICIAL THAN PROBATIVE AND INADMISSIBLE UNDER MISSISSIPPI RULE OF EVIDENCE 403?
¶ 10. Albright contends that the trial court improperly admitted nine Polaroid photographs of Tina Albright’s body. The photographs were taken by the pathologist, Dr. Steven Hayne, after the body had been cleaned. The photographs were close-ups of body parts that had received entry or exit wounds. At trial, Albright objected to admission of the photographs as more prejudicial than probative because they would inflame the jury. In an in camera hearing, Dr. Hayne testified that each photograph would be useful in providing a thorough explanation of the autopsy report during his testimony before the jury. Dr. Hayne testified that, while the pictures might provoke an uncomfortable reaction in a viewer, they would not be expected to provoke a severe visceral reaction. Based on this testimony, the court found that the photographs were not more prejudicial than probative and admissible under Mississippi Rule of Evidence 403.
¶ 11. This Court will reverse the trial court’s evidentiary ruling for abuse of discretion. Alexander v. State, 610 So.2d 320, 338 (Miss.1992). Regarding photographs, “the discretion of the trial judge runs -.toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.” Brown v. State, 682 So.2d 340, 353 (Miss.1996) (quoting Hart v. State, 637 So.2d 1329, 1335 (Miss.1994)). However, gruesome photographs with no evidentiary value that only arouse the emotions of the jury are inadmissible. Sharp v. State, 446 So.2d 1008, 1009 (Miss.1984). “[photographs have evidentiary value when they: ‘(1) aid in describing- the circumstances of the killing and the corpus delicti; (2) where they describe the location of the body and cause of death; (3) where they supplement or clarify witness testimony.’ ” McGilberry v. State, 741 So.2d 894, 906 (Miss.1999) (quoting Westbrook v. State, 658 So.2d 847, 849 (Miss.1995)).
¶ 12. Applying these standards, we find the trial court did not abuse its discretion by admitting the photographs of Tina Al-bright’s body. ■ The photographs were not particularly gruesome. The body had been cleaned and dried and there was very little blood. The photographs described the cause of death and supplemented and clarified Dr. Hayne’s testimony; therefore, they had evidentiary value. Tina Albright suffered multiple wounds, and the photographic depiction of the size, nature and location of the wounds was helpful to understanding how she was killed. The trial *1276 court properly admitted the photographs. See Holly v. State, 671 So.2d 32, 41 (Miss.1996); Hart v. State, 637 So.2d 1329, 1334-36 (Miss.1994); Turner v. State, 573 So.2d 657, 667 (Miss.1990).
II. DID THE TRIAL COURT ERR BY DENYING ALBRIGHT’S MOTION FOR A NEW TRIAL?
¶ 13. A motion for a new trial implicates the trial court’s sound discretion, and only should be granted when the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, Would constitute an unconscionable injustice. Wetz v. State, 503 So.2d 803, 812 (Miss.1987). This Court will reverse and order a new trial only upon a determination that the trial court abused its discretion, considering as true all evidence favorable to the State. McClain v. State, 625 So.2d 774, 781 (Miss.1993).
¶ 14. At trial, Albright attempted to impeach Karen Albright’s testimony with testimony from her relatives that on several prior occasions Karen had related slightly different versions of the events of the afternoon of April 13, 2000. Two relatives testified that Karen had asked them about the consequences of lying on the witness stand. In no version of the events did Karen allege that anyone other than Albright was the shooter. On appeal, Al-bright argues that the inconsistencies demand that we reverse for a new trial. Albright also addresses other alleged evi-dentiary conflicts and alleged incomplete police investigation as bases for reversal.
¶ 15. We have reviewed the evidence and find that Albright’s arguments are without merit. Considering the evidence in the light most favorable to the State, it was reasonable for the jury to find Robert Albright guilty. The evidence shows that Tina Albright received nonfatal wounds from a .22 caliber gun and other wounds, including the fatal wound, from a .410 gauge shotgun. Albright kept a .22 caliber handgun and a .410 gauge shotgun in his room. Karen saw Albright come out of his room and shoot at her and at Tina Al-bright with a .22 caliber handgun. Karen saw Albright standing in front of Tina Albright in the driveway. Albright’s arm was raised. Then, Karen heard a loud shot. Less than five minutes after Al-bright left Buddy’s store in the gold Explorer, the same gold Explorer was parked at Dabbs Creek at the spot where the weapons, a .22 caliber handgun and a .410 gauge shotgun, were discovered. Ten minutes later, Albright drove up to his house in the gold Explorer.
¶ 16. It is the unique function of the jury to weigh the evidence and to resolve any conflicts therein. McLelland v. State, 204 So.2d 158, 164 (Miss.1967). In exercising this function, the jurors may accept the testimony of some witnesses and reject the testimony of others. Id. Further, “the testimony of a single uncorroborated witness is sufficient to sustain a conviction.” Williams v. State, 512 So.2d 666, 670 (Miss.1987). In this case, the jury reasonably found that Albright was responsible for the murder of his mother and aggravated assault of his sister.
III. DID THE TRIAL COURT ERR BY DENYING ALBRIGHT’S POST-TRIAL MOTION FOR BLOOD TESTING OF KAREN AL-BRIGHT’S CLOTHES?
¶ 17. Police investigators did not submit Karen Albright’s clothes for blood testing. Other blood samples taken from the crime scene were never tested because the crime lab where the samples were sent no longer conducted that type of DNA *1277 testing. The police received notice three weeks before trial that the samples were untested. At some point before trial, defense counsel was told that the samples were untested. After trial, Albright’s family informed defense counsel that they were willing to pay for testing. On April 18, 2001, Albright filed a post-trial motion requesting permission to test blood stains on Karen Albright’s clothes and blood stains from the Albright’s driveway.
¶ 18. In his oral presentation of the motion to the trial court, defense counsel alleged that the reason he did not move for testing before trial was that he did not discover the blood samples were untested until “immediately” before trial. The trial court denied the motion as untimely, stating that it would have granted the motion had it been made before trial. On appeal, Albright argues the trial court improperly denied the motion. He admits that the motion could have been made before trial, but asserts that it was not made because defense counsel was appointed late and the Albright family did not indicate willingness to pay for testing until after trial. He argues that there is a possibility that testing would reveal evidence that would exculpate Albright by implicating Karen Al-bright.
¶ 19. The standard of review of a post-trial motion is abuse of discretion. Robinson v. State, 566 So.2d 1240, 1242 (Miss.1990). We find that the trial court did not abuse its discretion by denying Albright’s motion. The motion was untimely. Al-bright received notice the samples were untested prior to trial and should have requested testing at that time. Cf. Brewer v. State, 819 So.2d 1165, 1168 (¶ 18) (Miss.2002) (possibility of exculpatory DNA testing of evidence became apparent during trial; trial court granted defendant’s motion for testing). Additionally, Albright has made no showing, beyond mere conjecture, that testing would reveal exculpatory evidence.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF SIMPSON COUNTY OF CONVICTION OF COUNT ONE, AGGRAVATED ASSAULT, AND SENTENCE OF TEN YEARS; COUNT TWO, MURDER, AND SENTENCE OF LIFE ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SENTENCE IN COUNT ONE TO RUN CONSECUTIVELY TO SENTENCE IN COUNT TWO IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SIMPSON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.